## JONATHAN N. HYDE ET AL.
### v.
## EZEKIEL HOWES.

1. PARTIES — NON-JOINDER — MUST BE PLEADED.—An objection that another person is jointly liable with the defendants, can be taken advantage of by plea in abatement only. Whether a formal written plea is necessary, in actions commenced before a justice, is immaterial, since the oath or affidavit that must accompany such plea, has not been dispensed with by the statute.

2. FORMER JUDGMENT — WHEN A BAR.—A judgment is conclusive upon the parties only in respect to the grounds covered by it, and the law and the facts necessary to uphold it. There being nothing in the record in this case, to show that the question in controversy was adjudicated by the court in a former trial, the former judgment does not constitute a bar to this proceeding.

3. HEARSAY — NOT ADMISSIBLE.—The plaintiff should not have been permitted to state that he commenced the work in question, in consequence of information purporting to come from the defendants. Proving what he had heard without in any way connecting the defendants with the truth of the report, was hearsay testimony and not admissible.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. DIXON & BETHIA, for appellants; that the facts in issue were determined in a former suit, and the appellee is estopped from again asserting them, cited Freeman on Judgments, § 257; Herman on Estoppel, § 81.

It is not essential to such estoppel, that all the parties should be the same in both causes: Bigelow on Estoppel, 60; Davenport v. Bennett, 51 Ind. 329; Ragor v. Kendall, 70 Ill. 95; Mack v. Brown, 73 Ill. 295.

Mr. D. D. O'BRIEN, for appellee; cited Freeman on Judgments § 267; Bigelow on Estoppel, 97; Baker v. Cleveland, 19 Mich. 230.

SIBLEY, P. J. In November 1877, Ezekiel Howes commenced suit before a justice of the peace of Lee county, to

recover of J. N. Hyde, Geo. M. Berkley and Geo. L. Schuler, a balance claimed to be due him upon a contract for ditching some swamp lands, which it was supposed would benefit the appellants as well as other adjoining owners. Before the justice the plaintiff recovered a judgment of $175 by default. The defendants appealed to the Circuit Court of that county, where upon a trial by jury, the same result was obtained and an appeal was there taken to this court.

One of the errors here assigned and urged with much apparent earnestness, we do not think it proper to consider, for if, as it is supposed, that Col. Dement was jointly liable with the other person sued, this error could have been taken advantage of by a plea in abatement only. 1 Chitty Pl. 46; Saunders, Pl. and Ev. 13; Lurton v. Gilliam, 1 Scam. 577. Whether a formal written plea was necessary or not, is immaterial, since the oath or affidavit that must accompany such a plea has not been dispensed with by any statutory provision. Nor is the fourth error assigned well taken. For the newly discovered evidence is entirely cumulative and not at all conclusive of the case. The same may be said of the point made, that appellee is estopped from asserting any claim he may have had against appellants by the record in a former suit commenced by Geo. L. Schuler against him, and determined by the court in favor of Schuler. It is insisted that the question of his liability with the other appellants was a necessary one for adjudication by the court, and therefore appellee is barred by way of estoppel. "A judgment," says Bigelow on Estoppel 22, "is conclusive upon the parties only in respect to the grounds covered by it, and the law and the facts necessary to uphold it." The doctrine established by the authorities does not vary the proposition. Then, inasmuch as there is nothing in the record to show that the question in controversy in this case was adjudicated by the court in that trial, what was there outside of the record to render it necessary that the court should have determined the rights of the parties in respect to the present cause of action ?

The matter to be decided on that trial was simply whether Ezekiel Howes was liable to Geo. L. Schuler on an individual

indebtedness, and nothing else. No difference how that claim arose, whether by means of Schuler's having, through mistake, overpaid his private subscription to this work to Howes, or grew out of some other transaction, it certainly cannot necessarily be inferred that Howes, in the suit, undertook by way of set-off, to establish a joint claim in his favor against Schuler and the other appellants, and that the court investigated the claim and adjudicated the question of their liability to him.

In respect to the first error assigned, that the court should not have permitted the plaintiff to answer as a witness the question put to him, whether he did not commence work in consequence of information purporting to have come from one of the defendants, there appears to be nothing in the case to take the answer to this question out of the general rule of hearsay evidence, and was therefore objectionable. The plaintiff was then seeking to establish a liability on the part of the defendants, by proving what he had heard without in any way connecting them with the truth of the report. So the admission of what Moore said to the witness Watson, about the character of the work done, was erroneous. Moore was sent there for the purpose only of making a survey of the work, and had no authority, as agent or otherwise, to admit away any of the rights of the absent parties. If his opinion was desired he should have been called as a witness.

The only other errors assigned relate to the action of the court in refusing to grant a new trial. The passing upon this question has necessitated a close examination into the evidence in the case. We do not propose to enter upon any detailed view of the testimony. But a word or two by way of the conclusion arrived at, may be considered not altogether inappropriate. Appellee, in his testimony, says that he made a verbal contract with appellants at the court house in Dixon, in the fall of 1876, to dig a mud ditch, and that it was necessary to take out two feet in order to get a proper start. His contract was 50 cents per cubic yard for the first two feet, and for this excavation the appellants agreed to become personally responsible to him. There was some talk of making it deeper, for which, if made, he was to have $1 per cubic yard. But no

Hyde et al. v. Howes.

agreement on that occasion was entered into in respect to the latter portion of the work.

After he had taken out the first two feet he met the parties at Schuler's store, and they settled with him for that job. Berkley then asked him about the digging of the next or third foot. Dement said for taking out that he would give $100. Schuler and Berkley offered $50 each. Hyde proposed $25. Berkley also remarked that they would get up a subscription, and told Howes to wait until he heard from them, and when enough was subscribed to take out another foot they would let him know. Some further conversation took place, but this is substantially all that appellee claimed was said by appellants in respect to becoming personally responsible to him for the work. A subscription paper was subsequently prepared, when these, with several other persons, subscribed the amount which they had agreed to pay. Howes afterward commenced the work, and as he was erroneously permitted to answer, against the objection of appellants, that it was in consequence of information purporting to come from one of them, having failed to show that such information did in fact come from any one of them. After he had commenced the work he says that Dement, Schuler, and, he thinks, Hyde and Berkley, viewed it. But he had no conversation with them during the time the work was progressing.

The real question is, what was the understanding of the parties as to whether the work was to be done by subscription, or that appellants agreed to become personally liable for it? Howes does not state that they made any promises of the kind, and all of the appellants swear positively that no such agreement was talked off. But that it was distinctly understood the work, after the first two feet, was to be done, if at all, by subscription alone and that they were not to be responsible for any more than the amount each severally promised and afterward subscribed to pay. If this was not the case it may be asked why did they tell Howes to wait till they had procured a sufficient subscription to do the work, and would notify him of that fact before commencing it? Why did Howes state to the witness Vrooman, while examining the subscription paper that

he was doing the work by subscription. Why were the sums named in that paper made payable to Howes, and why did he draw orders on the subscribers, reciting that the amounts subscribed by them were due him, if he was performing the work relying solely upon the promise of appellants to pay for it?

Van Arnam, who was present at the first meeting of these parties at the court house, and was also a bidder for the job, testified that he declined to take it unless appellants and Col. Dement would become personally responsible for the pay, but it was understood the work was to be done by subscription, and that Howes remarked at the time the subscribers were perfectly good, and he would take them. The four persons, however, concluded to have two feet taken out at their own expense, and Howes was to assist in getting up subscriptions and pay $50 himself. The fact has not escaped our attention, that opposed to this array of evidence, there are a few loose admissions made by the appellants or some of them, that they considered themselves liable to pay any balance that might remain after the subscriptions were all collected. Whether these expressions should be considered as a mere matter of individual opinion, if made at all, or intended as a promise made subsequently by way of indemnification, we do not think sufficient to obviate the necessity of awarding a new trial, for the reason that the verdict was clearly against the evidence.

Judgment reversed and cause remanded.

Judgment reversed.